UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA TERRY,

                Plaintiff,            Civil Action No. 17-11496
                                        Honorable Paul D. Borman
                                        Magistrate Judge David R. Grand

v.

ACTING COMMISSIONER
NANCY A. BERRYHILL,

                Defendant.

_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [14, 16]**

Plaintiff Linda Terry ("Terry") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [14, 16], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.     RECOMMENDATION

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Terry is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's motion for summary judgment [16] be DENIED; that Terry's motion for summary judgment [14] be GRANTED; and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Report and Recommendation.

## II.     REPORT

### A.     Procedural History

On September 14, 2011, Terry filed an application for DIB, alleging a disability onset date of September 12, 2003.  (Tr. 11, 78, 85).  This application was denied at the initial level.  (Tr. 85).  Terry filed a timely request for an administrative hearing, which was held on August 6, 2012, before ALJ Richard L. Sasena.  (Tr. 22-42, 553-76).  Terry, who was represented by non-attorney representative Dannelly C. Smith, testified at the hearing, as did vocational expert ("VE") Michael E. Rosko.  (*Id.*).  At the hearing, Terry amended her alleged onset date to February 21, 2007.  (Tr. 25, 557).  On November 29, 2012, the ALJ issued a written decision finding that Terry is not disabled under the Act.  (Tr. 8-21).  On April 3, 2014, the Appeals Council denied review.  (Tr. 1-5, 592-96).  Terry timely filed for judicial review of the final decision on June 9, 2014.  (Civil Action No. 14-12274, Doc. #1).

On July 14, 2015, Magistrate Judge Michael Hluchaniuk issued a Report and Recommendation in which he found that remand was necessary to obtain a proper medical source opinion to support the ALJ's residual functional capacity ("RFC") determination, and also to supplement and clarify treating physician Dr. Craig Everingham's records and opinions, which were illegible.[1]  (Tr. 643-44).  Because Dr. Everingham's records were illegible, Judge Hluchaniuk concluded that "there [wa]s simply no way for [him] to evaluate whether the ALJ correctly analyzed Dr. Everingham's records."  (Tr. 641-43).  This was significant given that "[t]he only functional limitations in the record [we]re those found in Dr. Everingham's records, which the ALJ discredit[ed], finding them inconsistent with the medical evidence during the

---

[1]  In addition, Judge Hluchaniuk found that remand was necessary for the ALJ to "obtain the opinion of a qualified medical advisor on the issue of equivalence as to [Terry's] physical impairments."  (Tr. 635, 644).  He wrote that "after all of the medical opinions [regarding the RFC, Dr. Everingham's records and opinions, and equivalence] are obtained and updated, the ALJ will necessarily have to re-evaluate [Terry's] credibility."  (Tr. 644).

period at issue."[2]  (Tr. 635, 643).  Magistrate Judge Hluchaniuk pointed out that there was no RFC determination in the record by a consulting physician, which led him to conclude that "the ALJ's RFC determination (at least in part) was not based on any medical opinion but was apparently formulated based on his own independent medical findings."  (Tr. 635-36, 643-44). Magistrate Judge Hluchaniuk found this problematic given that case law indicates that at an ALJ should rely on medical opinions to support a claimant's RFC rather than make his "own independent [lay] medical findings" based on his "own expertise in drawing RFC conclusions from raw medical data."  (Tr. 636-37).

On September 28, 2015, the Honorable Arthur J. Tarnow adopted the Report and Recommendation issued by Magistrate Judge Hluchaniuk and ordered that the case be remanded under Sentence Four.  (Tr. 598-611).  In reviewing the Commissioner's objections, Judge Tarnow agreed with Magistrate Judge Hluchaniuk's assessment "regarding the need to update and obtain sufficient medical RFC assessments in order to evaluate [Terry's] credibility."  (Tr. 608).  In addition, Judge Tarnow found that the two-part test that triggers a duty to re-contact a treating physician was met.  (Tr. 609-10).  He determined that it would have been easy for the ALJ to contact Dr. Everingham to resolve the ambiguity that resulted from the lack of information in the record to support Dr. Everingham's RFC opinion.  (Tr. 610).  As a result,

---

[2] Specifically, the ALJ analyzed Dr. Everingham's opinion as follows:

> [T]reating source opinion . . . Dr. Craig Everingham prepared a statement dated July 2, 2012, indicating that [Terry] needs to elevate her legs, and cannot sit or stand/walk greater than 2 hours per 8-hour workday . . . . However, those opinions are given little weight, as they are not warranted by the treating notes prior to the date last insured.  There are minimal notes during the period of time until her date last insured, none [of] which indicate limitations to this degree or that would limit her being [sic] the restrictions in the [RFC].

(Tr. 16).

Judge Tarnow ordered that "[o]n remand an updated medical opinion from [Terry's] treating physician should be obtained so that there is objective medical evidence from the claim time at issue from which to adequately assess the credibility of [Terry's] subjective information from . . . that time."  (Tr. 610-11).

On October 20, 2015, the Appeals Council vacated the ALJ's decision and remanded the case to an ALJ "for further proceedings consistent with the order of the court," which included the opportunity for a hearing, taking additional steps to complete the administrative record, and issuing a new decision.  (Tr. 649).

A second administrative hearing was held on March 24, 2016, before ALJ Sasena, but it was adjourned because of issues with the ALJ's request for a medical expert.  (Tr. 545-52).  A third administrative hearing was held on October 19, 2016, also before ALJ Sasena.  (Tr. 500-44).  Terry was again represented by non-attorney representative Smith, and testified at the hearing, along with medical expert Chukwuemeka Ezike, M.D., and VE Cheryl Mosley.  (*Id.*). On January 12, 2017, the ALJ issued a written decision finding that Terry was not disabled under the Act between February 21, 2007 (the alleged onset date)[3] and December 31, 2008 (the date last insured).  (Tr. 481-99).  Terry timely filed for judicial review of the final decision on May 10, 2017.  (Doc. #1).  The parties filed cross-motions for summary judgment (Docs. #14, #16), and Terry filed a reply.  (Doc. #17).

B.    **Framework for Disability Determinations**

---

[3] In certain parts of the ALJ's decision (such as in the headings that lay out his five-step analysis), the ALJ considers September 12, 2003 to be Terry's alleged onset date.  (*See e.g.*, Tr. 484, 486, 493).  But as mentioned above, Terry amended her alleged onset date to February 21, 2007 at the first administrative hearing.  (Tr. 25, 557).  Despite the ALJ's multiple references to a 2003 alleged onset date, the ALJ appears to be aware of Terry's amended alleged onset date in his discussion of Terry's medical records.  (Tr. 489) ("[Terry] has amended her onset date to February 21, 2007 . . . . Although [Terry] alleges an onset date in 2007, there is not medical evidence from that time until the date last insured to support disability.").

4

Under the Act, DIB are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

5

###### C.      Background

###### 1.      The Record

Terry alleges disability as a result of diabetes, issues with her heart, kidney stones, having one kidney, and arthritis.  (Tr. 140).  At the time of the first administrative hearing, Terry was forty-nine years old.[4]  (Tr. 28, 561).  She was 5'9'' tall and weighed 393 pounds (she indicated that her weight fluctuated between 385 and 400 pounds).  (Tr. 29, 140, 561).  From 1996 to 1997, she was a housekeeping manager at Hampton Inn.  (Tr. 507, 540).  She last worked in 2003 as a machine operator for a manufacturing company called Honalestemer.  (Tr. 507-08).  In 2006, she had a kidney removed because of a large kidney stone.  (Tr. 509).

The Court has thoroughly reviewed the record in this matter, including Terry's medical record, Function Reports, Disability Reports, and testimony as to her conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

###### 2.      Medical Expert's Testimony

Chukwuemeka Ezike, M.D., testified by phone as an impartial medical expert at the October 19, 2016 administrative hearing.  (Tr. 521-39).  Dr. Ezike, who did not examine Terry, opined that prior to December 2008 Terry had the severe impairments of morbid obesity and bilateral recurrent kidney stones that resulted in the removal of her right kidney in February 2006.  (Tr. 523-24, 527).  In his opinion, none of Terry's impairments during the relevant time frame met or equaled a listed impairment – in particular, Listing 6.00.  (Tr. 524-25).  He determined an RFC for Terry where prior to December 2008 she would have been able to lift, push, and pull twenty pounds occasionally and ten pounds frequently; sit six hours a day with normal breaks; stand and walk at least two hours a day with normal breaks; occasionally climb

---

[4] At the most recent administrative hearing, Terry was fifty-three years old.  (Tr. 506).

stars, balance, bend, stoop, crawl, and kneel; and never climb roofs, ladders, and scaffolds. (*Id.*). In addition, there would have been no established environmental limitations and no visual, communicative, or manipulative limitations. (Tr. 525).

Dr. Ezike testified that Terry did have edema in 2007, which "may affect her ability to stand for a long period of time," but "edema in itself does not preclude employment." (Tr. 526, 531). He explained that the limitation in the RFC that limited standing to about two hours a day "covers any kind of limitations that can arise from [INAUDIBLE] edema in combination with . . . treatment which would include . . . vascular stockings and . . . diuretics." (Tr. 532). He stated that in his own practice he does not have patients keep their feet elevated, but it would not be "unreasonable" for a physician to instruct a patient to do so. (Tr. 533, 538). He testified that he saw no evidence indicating that before December 2008 Terry had a disturbance of gait and station "the way [he] understand[s] it." (Tr. 536, 538). According to the hearing transcript, he also testified: "I don't see – I don't see how obesity, or edema, or infection will cause [INAUDIBLE] of motor function. I don't see it." (Tr. 538).

### 3. *Vocational Expert's Testimony*

Cheryl Mosley testified as an independent VE at the last administrative hearing. (Tr. 539-42, 770-71). The ALJ asked the VE to imagine a hypothetical individual of Terry's age, education, and work experience who was limited to light work; cannot use ladders; can occasionally climb stairs, balance, stoop, lean, crouch, or crawl; and has to avoid unprotected heights or moving machinery. (Tr. 539-40). The VE testified that the hypothetical individual could perform Terry's past work as a housekeeping manager. (Tr. 540). The ALJ then asked the VE if the housekeeping manager position could still be performed if, in addition, the individual had to change positions after approximately twenty minutes. (Tr. 540-41). The VE testified that

this additional limitation would make the housekeeping manager position unavailable, but that the following jobs could be performed:  information clerk (Dictionary of Occupational Titles ("DOT") number 237.637-018; Specific Vocational Preparation ("SVP") of 2; 1,200 jobs regionally; 420,000 jobs nationally) and order caller (DOT number 209.667-014; SVP of 2; 3,200 jobs regionally; 1,400,000 jobs nationally).[5]  (Tr. 541).

The ALJ then asked the VE to imagine a hypothetical individual with the same limitations listed above whose exertion level was reduced to sedentary.  (*Id.*).  The VE testified that the individual could perform the following jobs:  telephone quotation clerk (DOT number 237.367-046; SVP of 2; 4,000 jobs regionally; 900,000 jobs nationally) and final assembler (DOT number 713.687-018; SVP of 2; 2,400 jobs regionally; 200,000 jobs nationally).  (*Id.*).

The VE explained that in a given day, employers generally allow two fifteen-minute breaks and a half-hour break for lunch.  (Tr. 542).  Furthermore, they allow no more than two absences in a given month; "anything above that would be work preclusive."  (*Id.*).  The VE also testified that an individual having to elevate her legs at least waist high for more than two hours in an eight-hour workday to reduce swelling "would be work preclusive to all employment." (*Id.*).

The VE averred that her testimony was consistent with the DOT, except for the portion that addressed a sit/stand option, breaks, absences, and the need to elevate legs.  (*Id.*).  For those issues, she relied on her professional experience of over twenty years.  (*Id.*).

### D.    The ALJ's Findings

At Step One of the five-step sequential analysis, the ALJ found that Terry did not engage

---

[5] The ALJ indicated that she reduced the number of jobs available in southeastern Michigan and nationwide to account for the sit/stand option.  (Tr. 541).

in substantial gainful activity from February 21, 2007 (her amended alleged onset date)[6] through December 31, 2008 (her date last insured).  (Tr. 486).  Next, the ALJ found that Terry has the severe impairments of history of kidney stones, varicose veins, and obesity.  (Tr. 487).  At Step Three, the ALJ found that Terry's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (*Id.*).

The ALJ then found that Terry retains the RFC to perform light work except that she requires a sit/stand option after twenty minutes; can occasionally climb, balance, stoop, kneel crouch, or crawl; and needs to avoid all exposure to unprotected heights and moving machinery.  (*Id.*).

At Step Four, the ALJ concluded that Terry's past relevant work was as a machine operator, which she was unable to perform through the date last insured.  (Tr. 491).  At Step Five, the ALJ found that considering Terry's age, education, work experience, and RFC, she can perform the following jobs that exist in significant numbers in the national economy: information clerk and order caller.  (Tr. 492).  As a result, the ALJ concluded that Terry was not disabled under the Act between February 21, 2007 (her amended alleged onset date)[7] and December 31, 2008 (her date last insured).  (Tr. 493).

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d

---

[6] *See supra* note 3.

[7] *See supra* note 3.

591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter

differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'").

**F.     Analysis**

In her summary judgment motion, Terry argues that the ALJ improperly evaluated the opinion of her treating physician, Dr. Everingham.[8]  (Doc. #14 at 12-18).  For the reasons set forth below, the Court finds that this argument has merit and that remand is appropriate.

*1.     The ALJ's Evaluation of Dr. Everingham's Opinion was Improper*

Terry argues that the ALJ did not give "good reasons" for giving Dr. Everingham's opinion little weight and that "the reasons cited by the ALJ for diminishing the opinion are erroneous."   (*Id.* at 12-13).   Terry argues that because the ALJ failed to re-contact Dr. Everingham on remand to obtain clarification of his illegible treatment notes, it is "warranted and appropriate" to remand the case to supplement and clarify Dr. Everingham's treatment notes and opinion.  (*Id.* at 15).  The Court agrees.

"Generally, the opinions of treating physicians are given substantial, if not controlling, deference," but they "are only given such deference when supported by objective medical evidence."  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) and 20 C.F.R. § 404.1527(d)(2)).   Thus, an ALJ

---

[8] Terry also argues that the ALJ should have addressed her need to elevate her legs, that the ALJ's obesity analysis is inadequate, and that the ALJ erred in his credibility assessment.  (Doc. #14 at 18-24).  Because the Court is recommending remand as to the ALJ's evaluation of Dr. Everingham's opinion, it need not address these arguments.  On remand, however, the ALJ should consider the record in full and the impact that all of Terry's impairments have on her ability to function in the workplace on an ongoing, full-time basis.

"'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley*, 581 F.3d at 406 (internal quotations omitted); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). However, it is "error to give [a treating source] opinion controlling weight simply because it is the opinion of a treating source" unless it is well-supported and consistent with the record as a whole. SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996).

If the ALJ declines to give a treating physician's opinion controlling weight, he must document how much weight he gives it, considering a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(c)(2) (establishing that the ALJ must "give good reasons" for the weight given to a treating source opinion)). "Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons . . . for the weight . . . give[n] [to the] treating source's opinion' – not an exhaustive factor-by-factor analysis." *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)). Ultimately, "[t]his procedural 'good reason' rule serves both to ensure adequacy of review and to permit the claimant to understand the disposition of his case." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550-51 (6th Cir. 2010) (citing *Rogers*, 486 F.3d at 242). That a treating physician's opinion is inconsistent with the record constitutes a "good reason" for not giving controlling weight to it. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 417-18 (6th Cir. 2011).

a.  Dr. Everingham's July 2, 2012 Opinion

On July 2, 2012, Dr. Everingham filled out a Physical RFC Questionnaire regarding Terry's impairments.  (Tr. 395-98).  Dr. Everingham indicated that he has treated Terry for thirty years.  (Tr. 395).  He listed her diagnoses as including diabetes, hypertension, hyperlipidemia, obesity, and kidney stones,[9] for which her prognosis was "fair."  (*Id.*).  He listed her symptoms as shortness of breath, lower back pain, leg pain, numbness in her hands and feet, and infections in her legs and swelling.  (*Id.*).  He identified her lower back, hips, and legs as areas where she experiences pain.  (*Id.*).  Where asked to list "the clinical findings and objective signs," he identified kidney stones, supraventricular tachycardia, and possibly arthritis (the handwriting is hard to read).  (*Id.*).  He indicated that Terry's "pain pills" cause drowsiness, dizziness, and nausea.  (*Id.*).  He also indicated that Terry's impairments lasted or can be expected to last at least twelve months.  (*Id.*).

Dr. Everingham opined that if Terry was placed in a competitive work situation, she would have functional limitations as a result of her impairments.  (Tr. 396-98).  In particular, Dr. Everingham estimated that Terry could walk zero city blocks without rest or severe pain.  (Tr. 396).  He circled numbers indicating that Terry could sit for one hour at a time before needing to get up and could stand for forty-five minutes at a time before needing to sit down or walk around.  (*Id.*).  He opined that Terry could sit and stand/walk for a total of less than two hours in an eight-hour workday (with normal breaks) and that she needs a job that allows her to shift positions at will from sitting, standing, or walking.  (Tr. 397).  Dr. Everingham also opined that Terry needs to include periods of walking around during an eight-hour workday; she must walk for five minutes every sixty minutes.  (*Id.*).  In addition, she sometimes needs to take unscheduled breaks during an eight-hour workday, although Dr. Everingham was "unsure" of

---

[9] Dr. Everingham lists one more diagnosis that is illegible.  (Tr. 395).

how often. (*Id.*). Dr. Everingham wrote that with prolonged sitting Terry's legs should be elevated to ninety degrees or heart level. (*Id.*). He indicated that she does not need to use a cane or assistive device while doing occasional standing/walking and that she can "[r]arely" lift less than ten pounds,[10] twist, stoop (bend), crouch/squat, climb ladders, and climb stairs. (Tr. 397-98). He opined that Terry has "significant limitations" with reaching, handling, or fingering; he specified that she can use her hands for 45% of the workday, use her fingers for 30% of the workday, and use her arms for 90% of the workday. (Tr. 398).

### b. Dr. Everingham's September 30, 2016 Letter/Supplemental Opinion

On September 30, 2016, Dr. Everingham wrote a letter that says:

> To Whom It May Concern: Ms. Linda Terry started with Lymphedema and Cellulitis of her lower extremity on 7/10/2007. For the past 9 years, Ms. Terry has had issues that have come and gone due to her compliance. If you have any further questions, please feel free to contact my office.

(Tr. 1143).

An October 13, 2016 note from non-attorney representative Smith to the ALJ explains that the language cited above is the correspondence Terry received from Dr. Everingham when, pursuant to the court's order, she requested further clarification regarding his July 2, 2012 RFC opinion and her limitations because his treating records are "hard to read." (Tr. 1142). Smith himself noted that Dr. Everingham's letter was "exceedingly short" and "assume[d] that [it] has little value in assessing this case." (*Id.*).

### c. The ALJ's Analysis of Dr. Everingham's Opinion

In his decision, the ALJ considered Dr. Everingham's opinion and subsequent letter/supplemental opinion. As for Dr. Everingham's opinion from July 2, 2012, the ALJ discussed it as follows:

---

[10] Dr. Everingham did not express an opinion as to Terry's ability to lift ten, twenty, and fifty pounds. (Tr. 397).

> [T]he treating source statement from 2012 is not supported by the medical evidence prior to the date last insured (Exhibit 5F). Specifically, Dr. Craig Everingham prepared a statement dated July 2, 2012, indicating that [Terry] needs to elevate her legs, and cannot sit or stand/walk greater than 2 hours per 8-hour workday (Exhibit 5F, p. 3-6). However, those opinions are given little weight, as they are not warranted by the treating notes prior to the date last insured, as explained above. There are minimal notes during the period of time until her date last insured, none [of] which indicate limitations to this degree or that would limit her being [sic] the restrictions in the [RFC]. This is confirmed by the testimony of the medical expert, Dr. Ezike, as explained above.

(Tr. 490).

The ALJ then summarized Dr. Everingham's 2016 letter/supplemental opinion, which he refers to as an "updated medical source statement," and evaluated it as follows:

> Dr. Everingham did not address any specific functional limitations that [Terry] had prior to the date last insured. He offered no other support for his opinions made in 2012 . . . . Moreover, this statement indicates that [Terry's] compliance was an issue with her medical condition. Although later treating notes were received by Dr. Everingham, they are not sufficient to establish disability prior to December, 2008 (see Exhibit 11F). As such, this statement is also given little weight.

(Tr. 490-91).

Terry takes issue with the ALJ's conclusion that "[t]here are minimal notes during the period of time until her date last insured" and argues that this is inaccurate because "[t]reatment notes from 2008 alone show appointments in January, February, March, June, August (two), October, and December." (Doc. #14 at 13) (citing Tr. 322-27). Terry states that "[t]he problem is that the notes are illegible, due to the doctor's handwriting." (*Id.*). Terry points out that when the ALJ concluded in his previous decision that there was no evidence in Dr. Everingham's treatment notes to support his opinions regarding Terry's functional limitations, Magistrate Judge Hluchaniuk recommended remanding the case (a recommendation that Judge Tarnow adopted) because Dr. Everingham's illegible treatment notes made it so that he was "unable to

determine if those conclusions are at all accurate or supported by the record."  (*Id.*).  According

to Terry, Dr. Everingham's treatment notes "remain illegible and were hardly clarified by Dr.

Everingham's only other communication, a short letter from September 2016 . . . ."  (*Id.*).  Terry

believes that the ALJ erred by not contacting Dr. Everingham to seek clarification from him and

to try to "remedy the lack of readable records" before and/or after he received the September

2016 letter/supplemental opinion.  (*Id.* at 14).

SSR 96-5p provides:

> Because treating source evidence (including opinion evidence) is
> important, if the evidence does not support a treating source's opinion on
> any issue reserved to the Commissioner and the adjudicator cannot
> ascertain the basis of the opinion from the case record, the adjudicator
> must make "every reasonable effort" to recontact the source for
> clarification of the reasons for the opinion.

SSR 96-5p, 1996 WL 374183, at *6 (July 2, 1996).  In other words, an ALJ must re-contact a

treating physician who provided an opinion on the issue of disability when two criteria are met:

(1) "the evidence does not support a treating source's opinion," and (2) "the adjudicator cannot

ascertain the basis of the opinion from the record."  *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d

269, 273 (6th Cir. 2010) (quoting SSR 96-5p, 1996 WL 374183, at *6).  SSR 96-5p specifically

defines "medical opinions" as "statements from physicians . . . that reflect judgments about the

nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis,

what you can still do despite impairment(s), and your physical or mental restrictions."  SSR 96-

5p, 1996 WL 374183, at *2 (internal quotations omitted).  Moreover, courts have specifically

drawn a distinction between a doctor's notes for purposes of treatment and a doctor's ultimate

opinion on an individual's ability to work.  *See e.g.*, *Brownawell v. Comm'r of Soc. Sec.*, 554

F.3d 352, 356 (3d Cir. 2008).  Pursuant to SSR 96-5p, an ALJ "must weigh medical source

statements under the rules set out in 20 CFR 404.1527 and 416.927, providing appropriate

explanations for accepting or rejecting such opinions."  SSR 96-5p, 1996 WL 374183, at *5.

Here, both of the SSR 96-5 criteria have been met since the ALJ concluded that:  (1) Dr. Everingham's July 2012 opinion is not supported by his treatment notes and the medical evidence prior to the date last insured, and (2) he could not "ascertain the basis of the opinion from the record" because Dr. Everingham's notes are illegible, even though he did not explicitly make this finding.  *See Toussaint v. Comm'r of Soc. Sec.*, No. 10-14827, 2012 WL 592198, at *8 (E.D. Mich. Feb. 1, 2012) ("As to the second prong, while the ALJ did not reject the opinion because he was unable to ascertain the basis of the opinion from the [evidence in the record], the undersigned concludes that this must be so since those notes are wholly illegible.").  The treatment notes that the ALJ considered were the same ones that Magistrate Judge Hluchaniuk and Judge Tarnow reviewed and found illegible to the point that remand was necessary.  Indeed, apart from Terry's height, weight, and the names of some medications and a few diagnoses, the records from the relevant time period are hard to decipher and preclude meaningful review of whether they support Dr. Everingham's opinion.  (*See* Tr. 322-36); *Belton v. Comm'r of Soc. Sec.*, No 10-14558, 2011 WL 6000765, at *9 (E.D. Mich. Nov. 4, 2011) ("It is quite obvious that the purpose of requiring the Secretary to supply the reviewing court with the administrative record is thwarted if the Secretary supplies documents that the reviewing court cannot read." (internal quotation and citation omitted)).  As a result, the case should be remanded again so that the ALJ can seek clarification from Dr. Everingham as to the treatment notes forming the basis of his July 2, 2012 medical opinion.  *See Brown v. Comm'r of Soc. Sec.*, No. 15-12494, 2016 WL 4253967, at *7 (E.D. Mich. July 13, 2016).

In support of her argument for remand, Terry cites to *Toussaint*, 2012 WL 592198, at *8-9.  (Doc. #14 at 14).  In *Toussaint*, the treating physician's office notes were illegible, and the

court concluded that a remand "to supplement and clarify" the treatment notes and opinions of the treating physician was warranted because the court "[wa]s unable to determine if [the ALJ's] conclusions [that there was no evidence to support the claimant's functional limitations and diagnoses] are at all accurate or supported by the record." *Toussaint*, 2012 WL 592198, at \*8-9. The court recognized that "the plaintiff bears the burden of establishing disability," but highlighted that "the ALJ also has a duty to fully develop the record." *Id.* at \*9 (internal citations omitted).

In this case, remand is warranted – like in *Toussaint* – due to the Court's continued inability to meaningfully review the ALJ's conclusion regarding Dr. Everingham's opinion and the ALJ's failure to clarify Dr. Everingham's treatment notes, which he found do not support Dr. Everingham's opinion. *See also Belton*, 2011 WL 6000765, at \*9 ("The ALJ has a 'duty to clarify' when presented with incomprehensible records." (internal citations omitted)). In Dr. Everingham's letter/supplemental opinion, which was obtained by Terry, Dr. Everingham made himself available to answer "further questions." (Tr. 1143). Yet there is no indication that the ALJ took him up on this offer in order to obtain additional clarification even though he noted that the letter/supplemental opinion "did not address any specific functional limitations" Terry had prior to the date last insured (the clarification of which was the very basis for obtaining the letter in the first place) and that Dr. Everingham "offered no other support for his opinions made in 2012." (Tr. 490). As mentioned above, the ALJ had a duty to develop the record as to this issue, and indeed was ordered to do so. *See supra* at 3-4, 16.

The Commissioner argues that re-contacting Dr. Everingham "yet again was not necessary" because "[h]e already said what he had to say." (Doc. #16 at 10). She argues that "[u]nder the circumstances, the ALJ reasonably went on to obtain live testimony from a medical

expert to make sense of what objective evidence there was" and "[n]othing more was required" because the ALJ ultimately "complied with this Court's directive to obtain evidence to support his RFC on remand."  (*Id.* at 10-11).  The Commissioner's argument is flawed in at least two respects.  First, it is not clear that Dr. Everingham "said what he had to say" about the topic he was supposed to address:  whether his prior treatment notes supported the functional limitations he imposed in his July 2, 2012 opinion.  Second, whether a treating physician has "already said what he had to say" is not the proper standard for determining whether a treating physician needs to be re-contacted, and at no point does the Commissioner address the two criteria laid out in SSR 96-5, which are the appropriate factors to consider.  In short, while the Court agrees with the Commissioner that the ALJ was instructed to obtain evidence to support the ultimate RFC on remand, the Commissioner overlooks that the ALJ was also instructed to re-contact Dr. Everingham to obtain evidence to clarify his treatment notes.  The ALJ still has not done this.

The Commissioner also argues that it was permissible for the ALJ to give Dr. Everingham's opinion little weight because "there is a lack of supporting evidence prior to [Terry's] date last insured to substantiate Dr. Everingham's 2012 opinion."  (*Id.* at 9).  But, as Magistrate Judge Hluchaniuk previously concluded, where Dr. Everingham's treatment notes are illegible, the Court cannot conclude that Dr. Everingham's opinion is not supported by the record evidence.  Particularly in light of the very lengthy treating relationship between Terry and Dr. Everingham, getting clarity as to this issue is critically important to a fair evaluation of Terry's claim.

Terry also argues that "[t]his Court did not accept ALJ Sasena's rationale in the previous decision, yet [the ALJ employed the same rationale] this time in disregarding the treating doctor's opinions."  (Docs. #14 at 14; #17 at 2).  This argument has merit.  Further supporting

the Court's recommendation to remand the case is the fact that the ALJ's reason for giving Dr. Everingham's July 2012 opinion little weight is identical to the explanation he gave in his prior decision, which Magistrate Judge Hluchaniuk found insufficient. (Tr. 16, 490); *see supra* note 2, at 15. Since his prior decision, it appears that the ALJ did not make "every reasonable effort" to re-contact Dr. Everingham to obtain evidence *that clarifies his treatment notes*, as the ALJ was instructed to do on remand. The ALJ explains that his analysis of Dr. Everingham's opinion "is confirmed by the testimony of the medical expert, Dr. Ezike."[11] (Tr. 490). While this may be the case, it does not change the fact that Dr. Everingham's treatment notes are still illegible, so the Court is still unable to determine whether the treatment notes support the July 2012 opinion where the ALJ found that they do not. This is crucial to a proper evaluation of Terry's claim because, under the treating physician rule, an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley*, 581 F.3d at 406 (internal quotations omitted); SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

Moreover, both Magistrate Judge Hluchaniuk and Judge Tarnow concluded that an evaluation of the SSR 96-5 criteria favored having the ALJ re-contact Dr. Everingham in order to clarify the meaning of certain medical records and obtain an updated medical opinion. However, the ALJ did not do this, at least not in a way that is helpful to resolving the questions and concerns that both judges previously expressed about the evidence in the record. (Tr. 610, 642). "[O]n the remand of a case after appeal, it is the duty of the lower court or the agency

---

[11] The Commissioner argues that the ALJ "was entitled to give greater weight to Dr. Ezike's opinion" than Dr. Everingham's opinion. (Doc. #16 at 9-10). But Terry's issue with the ALJ's handling of Dr. Ezike's opinion is not that the ALJ gave it greater weight; rather, Terry argues that the ALJ "misinterpreted or ignored evidence that offered support for [her] subjective complaints/Dr. Everingham's opinions," including Dr. Ezike's testimony. (Doc. #14 at 15-16).

from which appeal is taken, to comply with the mandate of the court and to obey the directions therein without variation . . . ." *Davis v. Sec'y of Health & Human Servs.*, 634 F. Supp. 174, 178 (E.D. Mich. 1986) (quoting *Mefford v. Gardner*, 383 F.2d 748, 758 (6th Cir. 1967)).  Even if the ALJ had directly obtained Dr. Everingham's letter/supplemental opinion,[12] that vague three-sentence document does not clarify the information contained in approximately twenty treatment notes that span almost two years of treatment, from February 21, 2007 through December 31, 2008.[13]  Thus, the ALJ's analysis of Dr. Everingham's opinion remains flawed.[14]

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is not supported by substantial evidence.

## III.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's motion for summary judgment **[16]** be **DENIED**; that Terry's motion for summary judgment **[14]** be **GRANTED**; and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Report and Recommendation.

Dated: May 18, 2018                           s/David R. Grand
Ann Arbor, Michigan                           DAVID R. GRAND

---

[12] The Commissioner acknowledges that Terry "sought out the statement" but contends that it is unclear whether she "did so at the request of the ALJ, or if she did so of her own accord." (Doc. #16 at 10 n.7).

[13] The Commissioner concedes that the September 2016 letter/supplemental opinion is "not enlightening."  (Doc. #16 at 10).

[14] The Court notes that this case was also previously remanded because it appeared that the ALJ "arrived at his RFC based on his own analysis of the medical evidence in the record, given that there are no other medical opinions in the record." (Tr. 636).  While the record now contains medical opinions by other physicians – namely Dr. Ezike and Guy Rowly, M.D. – the ALJ failed to discuss their opinions regarding what they believed was an appropriate RFC for Terry.  (*See* Tr. 490-91, 524-25, 775).

United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 18, 2018.

s/Eddrey O. Butts

EDDREY O. BUTTS
Case Manager